## Commonwealth v. Case

*George M. Hess*, for plaintiff.

*Greevy, Knittle, Fisher & Rice*, for defendant.

GREEVY, J., December 17, 1959.—Defendant was convicted of the charge of "reckless operation of a motor boat" before a justice of the peace of Lycoming County and an appeal de novo was allowed by this court. At the conclusion of the Commonwealth's testimony counsel for defendant moved to quash the information, dismiss the charge and discharge defendant. This motion is now before us.

Defendant's counsel, in his motion, attacks the validity of the proceeding on six grounds, to wit:

1. Since defendant had never been arrested, the justice of the peace was without jurisdiction.

2. The complaint filed by the fish warden did not sufficiently aver reckless operation of a motor boat.

3. The justice of the peace fixed the amount of the fine prior to hearing.

4. The prosecutor had not the power to prosecute an action on information and belief.

5. Defendant was denied due process for the reason that no rules or regulations of the Pennsylvania Fish Commission, under which the action was brought, had been published for the period during which the alleged offense occurred.

6. The Pennsylvania Motor Boat Law of May 28, 1931, P. L. 202, as amended, 55 PS §§483-490, is un-

constitutional in that it unlawfully delegates to the Pennsylvania Fish Commission the power to create criminal offenses relating to the operation of motor boats.

Reasons nos. 2, 3, 4 and 6 are without merit, and our argument is confined to reasons nos. 1 and 5.

Before a defendant can be tried on any criminal charge it is essential that he be served with process by some authorized method:

"When a crime has been committed, it is necessary that the offender be brought by some process before a tribunal made competent by law, where his guilt or innocence may be determined ...

" 'The word "process" has in law a well-established legal meaning in its application to the commencement of the proceeding; it is used to designate the writ or other judicial means by which a defendant is brought into Court to answer a charge, though there may afterwards be issued in the progress of the case interlocutory and final process. In criminal cases, where a person is to be brought into a court for trial, the term "process" is used to designate the warrant which is issued for his arrest, whether before or after indictment found' ": 1 Sadler's Criminal Procedure in Pennsylvania, 2d Ed. §71, p. 71.

The act pertaining to motor boats on inland waters, supra, authorizes and empowers persons employed by the Commonwealth in the capacity that the prosecutor in this case occupied, that is fish warden, to make arrests without a warrant for violations which they witness: Act of 1931, sec. 12, 55 PS §487.

The alleged violation in this case was not witnessed by the prosecutor but was "filed on information received". The procedure used by the justice of the peace in this case was the form of procedure authorized by

The Vehicle Code of May 1, 1929, P. L. 905, sec. 1202, 75 PS §732. In fact so closely was this procedure followed that the justice of the peace, instead of issuing a warrant for the arrest of defendant, sent to defendant by certified mail an executed form entitled "Auto Violation-Summons to Appear", with the word "Auto" interlineated. If at any time a justice of the peace is in any doubt as to which form of process to use, he should issue a warrant and a warrant should have been issued in this case. It cannot be said that defendant's voluntary appearance before the justice of the peace waived this defect because the defect was objected to prior to the hearing held by the justice of the peace, as shown by the transcript. There was a total lack of process in this case. The necessity for due process is pointed up by the very thing that happened in this case. The only notice that defendant had of a charge against him was an unauthorized summons that gave defendant no notice of the specific charge which had been made against him. It sets forth merely: "Contrary to Sub-Section A, Section 11, Act 121, P. L. 1931, as amended". Presumably this was supposed to relate to the named subsection of the Motor Boat Law which sets forth:

"The board is hereby authorized and empowered to prescribe, promulgate, and enforce:

"General rules and regulations to be observed in the operation or navigation of motor boats upon, over, or through inland waters which it shall deem necessary for the public health or the safety of persons or property on or in such waters or for the preservation of all forms of useful aquatic life particularly as to speed, running, lights, signals, courses, channels, rights-of-way, and the disposal of oil, gas, gasoline, or other wastes from such boats."

This subsection, however, neither creates nor defines any crime or offense, so that defendant did not have knowledge of the charge he had to defend. This contention is sustained.

The fifth contention of defendant also relates to due process. The Motor Boat Law in itself does not create or define any crime. It authorizes the Board of Fish Commissioners to prescribe, promulgate and enforce special rules and regulations, the violation of which shall be crimes. Before a person can be charged for the violation of a rule or regulation of an administrative agency, some publication or notice of the rule or regulation must be given to the person charged.

In the Federal Government there is a prerequisite to the validity of a rule or regulation of a Federal agency that it be published in a Federal Register: Administrative Procedure Act of June 11, 1946, sec. 1, 3(a), 6(b), 60 Stat. 237, 5 U. S. C. §§1001, 1002(a) and 1005(b). Most States have adopted similar safeguards. In Pennsylvania the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1 et seq., states in section 21, 71 PS §1710.21, inter alia:

"Regulations adopted after the thirty-first day of May, one thousand nine hundred fifty-two, shall have no effect until a copy thereof, certified by the executive officer, chairman or secretary of the agency, is filed in the Department of State, in such form and size as shall be prescribed by the Department of State."

The Commonwealth failed to show the existence of any valid rule or regulation of the Pennsylvania Fish Commission because it failed to show the requisite filing.

The Commonwealth offered in evidence exhibits nos. 1 and 2, both of which purported to be published copies of the Motor Boat Rules and Regulations. The front page of exhibit 2 in print stated that it was for the

period "April 1, 1958, to March 31, 1959," but the expiration date had been altered in ink to read "1960". The words "or until amended" appear under these dates. Exhibit 1 was not altered in ink but included the words "or until amended" underneath the dates. Although there was testimony that copies of the Motor Boat Rules and Regulations are issued annually to each licensee with his license, there was no testimony that a copy with the expiration date as shown on Commonwealth's exhibits 1 or 2 was given to defendant. In fact both of the Commonwealth's exhibits differ from defendant's exhibit 10, which states that it is the Motor Boat Rules and Regulations for the period April 1, 1958, to March 31, 1959. There is no indication on this exhibit that the rules would continue in effect until amended.

For the reasons set forth above the motion of counsel for defendant will be granted.

The court makes the following

### Order

And now, December 17, 1959, upon motion of Daniel F. Knittle, attorney for defendant, the information is quashed, the case is dismissed and defendant is discharged. Costs on the county.